UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY GARRETT HASKELL,<br><br>        Plaintiff,<br><br>    v.<br><br>BJ FADEM, et al.,<br><br>        Defendants. | Case No.  24-cv-09305-PCP<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 22 |

Defendants in this action move to dismiss plaintiff Jeffrey Haskell's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons discussed herein, the motion is granted with leave to amend.

## BACKGROUND[1]

Plaintiff Jeffrey Haskell is the father of two children. He alleges that he lost custody of his two children in 2019 after going viral on social media when a confrontation occurred between Haskell and bystanders in the presence of his child. The confrontation involved, among other things, Haskell's support for President Donald Trump. While subsequent custody proceedings in state family court were ongoing, Haskell pulled a gun on family therapist Marcia Clark in July 2022 while she was at her office with another patient. Haskell pleaded no contest to the resulting criminal charges and was imprisoned until May 22, 2024.

On December 20, 2024, Haskell filed this complaint against Clark, his children's former court-appointed attorney BJ Fadem, and another attorney Nicole Ford. Ford had represented

---

[1] For the purposes of defendants' Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged in plaintiffs' complaint.

Fadem in restraining order proceedings against his sister that took place in 2022.[2] Haskell alleges that defendants Clark, Fadem, and Ford conspired with the judge in the family court proceedings to falsely assert to Haskell that one of his children was transgender and self-mutilating and that his other child was suicidal. Haskell alleges that an ex parte communication was made to the judge about his child's transgender status before an August 2021 hearing, and that Haskell first learned of the child's transgender status when the judge announced it from the bench. Haskell alleges that he later learned, at an unspecified date, that his children were not suicidal or self-mutilating. He learned in February 2024 that his child was not transgender when Haskell's sister searched for and found the child's TikTok account.

Haskell alleges that defendants knew and intentionally caused Haskell "extreme anxiety by the lies that his children were transgender, suicidal and self-mutilating while denying his right to see his children to investigate and adjudge such major life matters as a parent." Per Haskell, defendants "had no intent to reunite him with his children, but rather intended to deny him custody and visitation to prolong their minor's counsel and therapist fees that they were charging to the county taxpayers." Haskell alleges that he was wrongfully deprived of his constitutional parental rights, and that defendants conspired against Haskell because of his support for President Trump.

Haskell's complaint contains four claims: (1) denial of Fifth and Fourteenth Amendment parental and due process rights under 42 U.S.C. § 1983; (2) conspiracy to "take away [Haskell's] rights, including his right to vote, because of his membership in the Trump supporter class," pursuant to 42 U.S.C. § 1985(3); (3) a request for a declaration under 28 U.S.C. § 2201 that is unconstitutional to deny Haskell parent-child contact for failure to pay therapist fees; and (4) fraud and willful misconduct pursuant to California law.

**LEGAL STANDARD**

## I.    Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) challenge may be facial,

---

[2] Ford also represented, in unrelated proceedings, the patient who was in Clark's office at the time Haskell pulled the gun.

United States District Court
Northern District of California

1    contending that the complaint's allegations are insufficient to invoke federal jurisdiction, or

2    factual, disputing the allegations that otherwise establish federal jurisdiction. *Safe Air for*

3    *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In reviewing a factual challenge, courts

4    may "review evidence beyond the complaint" and "need not presume the truthfulness of the

5    plaintiff's allegations." *Id.*

6        To establish standing in federal court, Article III of the Constitution requires a plaintiff to

7    demonstrate "(i) that he suffered an injury in fact that is concrete, particularized, and actual or

8    imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would

9    likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). If

10   the plaintiff's claim is one for which the court can offer no remedy, "there is no case or

11   controversy for the federal court to resolve." *Id.* at 423 (citation omitted).

12   **II.    Rule 12(b)(6)**

13       Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain

14   statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil

15   Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon

16   which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the

17   court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

18   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only

19   where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

20   legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To

21   survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief

22   that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

23       In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the

24   complaint as true and construe the pleadings in the light most favorable" to the nonmoving party.

25   *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal

26   conclusions "can provide the [complaint's] framework," the Court will not assume they are correct

27   unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept

28   as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

United States District Court
Northern District of California

1   inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell*

2   *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

3        Materials outside the complaint can be considered on a Rule 12(b)(6) motion if they are

4   incorporated by reference therein or otherwise judicially noticeable. *See United States v. Ritchie*,

5   342 F.3d 903, 908 (9th Cir. 2003) ("A [district] court may [ ] consider certain materials—

6   documents attached to the complaint, documents incorporated by reference in the complaint, or

7   matters of judicial notice—without converting the motion to dismiss into a motion for summary

8   judgment."). The court may consider documents that are "not physically attached to the

9   complaint" "if the [ ] 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily

10  relies' on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v.*

11  *FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)). Federal Rule of Evidence 201 permits judicial

12  notice of "a fact that is not subject to reasonable dispute" because it is "generally known."

13                                      **ANALYSIS**

14  **I.    Defendants' request for judicial notice is granted.**

15       In support of their motion to dismiss, defendants have requested judicial notice various

16  filings in the state court family law and restraining order proceedings.

17       The Court grants the requests for judicial notice because the documents are public

18  documents available from a source whose accuracy cannot reasonably be questioned. *See* Fed. R.

19  Evid. 201(b). While the Court takes judicial notice of the existence and content of the documents

20  at issue, it will not take judicial notice of the underlying truth of any factual assertions therein. *See*

21  *Occidental Rsch. Corp. v. Tamkin as Tr. of Tamkin Fam. Tr.*, No. CV 17-4621-R, 2018 WL

22  1941933, at *2 (C.D. Cal. Apr. 2, 2018) ("[P]ublic records are appropriate subjects of judicial

23  notice only 'to prove their existence and content, but not for the truth of the matters asserted

24  therein.'" (quoting *Kittrich Corp. v. Chilewich Sultan*, *LLC*, 2013 WL 12131376, at *3 (C.D. Cal.

25  Feb. 20, 2013))).

26  **II.   Haskell adequately alleges Article III standing for his parental rights claims.**

27       To satisfy Article III's case or controversy requirement, a plaintiff must establish that he

28  has standing to invoke the jurisdiction of the federal courts. *Bowen v. Energizer Holdings, Inc.*,

United States District Court
Northern District of California

118 F.4th 1134, 1142 (9th Cir. 2024) (citing *TransUnion*, 594 U.S. at 423). "To do so, [the plaintiff] must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (cleaned up).

Defendants raise a factual Rule 12(b)(1) attack, arguing that Haskell lacks Article III standing to pursue his claims because, as evidenced by the judicially noticed state-court records, Haskell's own conduct—not defendants' conduct—caused his loss of parental rights. "The rules governing a factual challenge to standing under Rule 12(b)(1) provide that once a defendant has contested the truth of the plaintiff's factual allegations, the plaintiff has the burden to support his jurisdictional allegations with 'competent proof." *Id.* (cleaned up). Here, defendants have not adequately contested the truth of Haskell's factual allegations: Haskell alleges that defendants were biased against him, and their "fraud on the court" ultimately resulted in the loss of his parental rights and was designed to and did cause the conduct by Haskell that contributed to the loss of his parental rights. The state court record does not directly refute Haskell's account. Even if it did, "when a court is faced with a factual attack on standing pursuant to Rule 12(b)(1), the court must leave the resolution of material factual disputes to the trier of fact when the issue of [standing] is intertwined with an element of the merits of the plaintiff's claim." *Id.* at 1144 (internal quotation omitted).

Haskell has therefore adequately alleged standing to pursue his parental rights claims.[3]

### III. The *Rooker-Feldman* doctrine and the domestic relations exception do not preclude this Court from hearing this action.

Defendants contend that Haskell's complaint is a collateral attack on the prior state court family law proceedings and that the *Rooker-Feldman* doctrine therefore precludes this Court from exercising subject-matter jurisdiction.

---

[3] As discussed below, this holding does not apply to Haskell's other claimed injuries, such as his loss of voting rights. With respect to these injuries, any alleged causal leak between defendants' conduct and the injury is too weak to permit a finding of standing, and no element of the merits of Haskell's claims is sufficiently intertwined with the standing determination to prevent the Court's resolution of the issue on a 12(b)(1) motion.

"*Rooker-Feldman* applies only when the federal plaintiff both [(1)] asserts as her injury legal error or errors by the state court *and* [(2)] seeks as her remedy relief from the state court judgment." *Miroth v. Cnty. of Trinity*, 136 F.4th 1141, 1151 (9th Cir. 2025) (quotation omitted) (emphasis in original). On his first, second, and fourth claims, Haskell seeks damages instead of an express overturning of the state court judgment. "This is a sufficient basis by which to conclude that the *Rooker-Feldman* doctrine does not apply" to those claims. *Id.* As to the declaratory relief claim, defendants contend that, although Haskell was required by the court to pay therapist fees, the state court's order did not actually make Haskell's visitation rights contingent on fee payment. Accordingly, by defendants' own argument, that claim does not seek relief from any state court judgment.

Nor does this case satisfy the other requirement for applying *Rooker-Feldman*. Suits in which "the federal plaintiff sues an adverse party from a state court proceeding and claims that the adverse party fraudulently procured the state court judgment" may be maintained without running afoul of *Rooker-Feldman. Id.* at 1150. Defendants argue that the suit is not brought against the adverse party but effectively against the court itself because the judge was involved in the alleged wrongdoing. But it does not matter whether the alleged fraud was "intrinsic" or "extrinsic." *See id.* at 1153 ("[W]e have never distinguished between so-called 'intrinsic' fraud and extrinsic fraud in the *Rooker-Feldman* context. Nor would it be proper or helpful to import that state-law distinction into the federal-law question of the scope of the *Rooker-Feldman* doctrine."). Here, Haskell has alleged "a wrongful act by the adverse party"—specifically, an ex parte communication with the judge and a biased conspiracy against him—not "legal error by the state court." *Id.* at 1150.

The defendants rely in part on *Thompson v. Thompson,* 798 F.2d 1547 (9th Cir.1986) (per curiam), in which the Ninth Circuit stated that "[e]ven when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters." *Id.* at 1558. Their reliance on *Thompson* is unavailing in light the Ninth Circuit's subsequent clarification that the domestic relations exception applies only where the federal court's subject matter jurisdiction is premised on party diversity. *See Atwood v. Fort Peck Tribal*

United States District Court
Northern District of California

1    *Ct. Assiniboine*, 513 F.3d 943, 947 (9th Cir. 2008). Here, three of Haskell's claims fall within the

2    Court's federal question jurisdiction, so the domestic relations exception cannot apply.

3    **IV.    Claims 1 and 2 are time-barred.**

4    Defendants contend that Haskell's claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C.

5    § 1985(3) are time-barred. "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion

6    only when the running of the statute of limitations is apparent on the face of the complaint."

7    *Thomas v. Cnty. of Humboldt, Cal.*, 124 F.4th 1179, 1191 (9th Cir. 2024) (quoting *United States*

8    *ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013)

9    (cleaned up)).

10    Claims under § 1983 and § 1985(3) "are subject to the state statute of limitations for

11    personal injury claims. In California, that state rule is two years." *Comm. Concerning Cmty.*

12    *Improvement v. City of Modesto*, 583 F.3d 690, 701 n.3 (9th Cir. 2009) (discussing § 1983);

13    *Woods v. Storms*, 793 F. App'x 542, 544 (9th Cir. 2020) (citing *Taylor v. Regents of Univ. of Cal.*,

14    993 F.2d 710, 711 (9th Cir. 1993)) (discussing § 1985(3)); *see* Cal. Civ. Proc. Code § 335.1. The

15    accrual date of these claims is a matter of federal law. *See Lukovsky v. City & Cnty. of San*

16    *Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) "[U]nder federal law, a claim accrues 'when the

17    plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Id.* "The

18    general common law principle is that a cause of action accrues when the plaintiff knows or has

19    reason to know of the injury that is the basis of the action and the cause of that injury … even if

20    'the full extent of the injury is not then known.'" *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d

21    883, 887 (9th Cir. 2017) (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).

22    December 20, 2022 is the date falling two years prior to the filing of this action. It is

23    apparent from the face of the complaint that none of the cognizable injuries upon which Haskell's

24    claims are premised took place after this date.[4] Haskell alleges he initially lost custody of his

26    _____

[4] Haskell alleges he was denied his right to vote for Donald Trump in the 2024 election, but
Haskell does not have Article III standing to rely upon this injury in pursuing his claims against
the defendants because Haskell was deprived of his right to vote only after pleading no contest to
the criminal charges arising from the gun incident. This intervening event breaks any chain of
causation between the injury and defendants' alleged conduct.

United States District Court
Northern District of California

United States District Court
Northern District of California

children in 2019 and that he was repeatedly denied custody and often visitation rights until he was imprisoned sometime in the summer of 2022. Haskell alleges he was billed for Clark's therapist fees between August 2019 and October 2022. And the purportedly improper ex parte communication to the judge took place prior to the April 2021 hearing where the alleged lie was first disclosed to Haskell.

Haskell argues that even though these injuries occurred before the limitations period, the "discovery rule" should toll the statute of limitations because he did not learn until 2024 that his children were not self-mutilating, suicidal, or transgender, as defendants had allegedly represented to him.[5]

> In actions like this, when federal courts borrow a state limitations period, the court also borrows the forum state's tolling rules. California has the "discovery rule" of tolling, "which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo–Surgery, Inc.,* 35 Cal.4th 797, 807 (2005). "A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." *Id.* (internal quotation marks and citation omitted). "[S]uspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." *Id.* California courts do not take a "hypertechnical approach" to interpreting the term "elements"—rather, a court examines whether a plaintiff has "reason to at least suspect that a type of wrongdoing has injured" him. *Id.*

*Bone v. City of Los Angeles*, 471 F. App'x 620, 622 (9th Cir. 2012).

Although Haskell may not have known for certain that defendants' representations were false until 2024, it is plain from the pleadings that Haskell suspected the falsity of defendants' representations well before December 20, 2022. Haskell alleges that as soon as the judge announced his child was transgender in April 2021, he "wondered how the judge knew. … Obviously, B.J. Fadem or someone had told the judge before the hearing. … Plaintiff had not been privy to that communication." Given the absence of any publicly available court filing

---

[5] The complaint does not allege the date upon which Haskell learned his children were not self-mutilating or suicidal, and alleges only the date when he learned his child was not transgender. Even accepting the all of these dates are the same, the discovery rule would not make Haskell's claims timely for the reasons noted above.

identifying the child's status—as Haskell himself notes in his complaint—Haskell had reason to suspect as soon as the judge's comment was made that the information had been conveyed through some other means. *See Bibeau v. Pac. Nw. Rsch. Found.*, 188 F.3d 1105, 1108 (9th Cir. 1999) ("The plaintiff must be diligent in discovering the critical facts.") The complaint also alleges other facts about Haskell's longstanding suspicion that his child was not transgender. For example, the complaint states that sometime before his imprisonment in 2022, Haskell "noticed that others did not call his [child by their alleged preferred name]. [Haskell] wrote Clark and asked why he had to call" his child by that name "when he saw that other, including [the child's] mother and [sibling] continued to call" his child by their birth-given name. The complaint explains that Haskell "was perplexed and concerned how it could be that Fadem and Clark had determined that his [child was transgender]. There was no indication they had sought expert input or referred [the child] for professional assessment as to the gender identity switch. … [Haskell] asked Defendants for, but never received, any doctor, expert, or other report with opinion that" the child wanted to go by their new allegedly preferred name. The complaint notes Haskell "was disturbed that an attorney, a therapist and a judge were telling him his" child was transgender "while not allowing him to visit [the child] to find out for himself." Other family members of Haskell "did not believe that [Haskell's child] was ever suicidal or that [his other child] was self-mutilating and transgender" and "perceived mistreatment because [Haskell] supported President Trump."

The complaint also alleges factual details suggesting that Haskell ascertained or could have ascertained prior to December 2022 that his children were not suicidal or self-mutilating. It contends that there was no evidence or verification that his child was suicidal and that Haskell eventually "concluded that his [child] was not suicidal" in part because "if [the child] were, therapist Clark had mandatory duty to report the suicide risk to the authorities" but "did not report." Haskell explains he "never saw or was told about any medical or expert report or opinion or photos on" his child's purported self-mutilation and he eventually "ascertained that minor's counsel and the therapist were telling him a made up story of his [child's] self-mutilation."

Because it is clear from the complaint's allegations that Haskell had reason to at least suspect the falsity of defendants' statements about his children prior to December 2022, the

United States District Court
Northern District of California

discovery rule does not alter the statute of limitations period in this case. And because all of Haskell's injuries occurred prior to the two-year statute of limitations, claims 1 and 2 are dismissed as time-barred.

## V.    Claim 3 fails to state a claim upon which relief can be granted.

Haskell seeks a declaration, pursuant to 28 U.S.C. § 2201, that is unconstitutional to make Haskell's parent-child contact contingent on his payment of therapist fees. Declaratory relief, however, "may not be premised on a wholly past violation of federal law." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Haskell alleges he was required to pay Clark's therapy bills from August 2019 to July or October 2022. Haskell makes no allegation that he continues to need to pay Clark's bills or any other therapy bills.[6] Because Haskell alleges only a past violation, his claim requesting declaratory relief is dismissed.

## VI.    The Court declines to exercise supplemental jurisdiction over claim 4.

Because the Court grants the motion to dismiss Haskell's federal claims, the Court must decide whether to exercise supplemental jurisdiction over the remaining state law claim. Original jurisdiction may be based on the existence of a federal question or diversity, as set forth in 28 U.S.C. sections 1331 and 1332. The complaint asserts that Court possesses federal question jurisdiction over the claims 1 through 3 and supplemental jurisdiction over claim 4. It appears that all parties are California citizens, such that diversity jurisdiction does not exist. Accordingly, the only potential basis for maintaining jurisdiction over Haskell's state law claim is supplemental jurisdiction under 28 U.S.C. § 1367.

"A court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it has original jurisdiction." *Ove v. Gwinn,* 264 F.3d 817, 826 (9th Cir. 2001) (citing 28 U.S.C. § 1367(c)(3)). "[I]n in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point

---

[6] Haskell separately alleges that some sort of criminal protective order is in place that prohibits his contact with Clark. If this is so, then there can be no active dispute regarding any conditions placed upon his ability to meet with his children in Clark's presence. *See* Dkt. No. 1 ¶ 228.

toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Haskell offers no reason why the Court should exercise supplemental jurisdiction over his state law claim if the federal claims are no longer present. Accordingly, the Court, in its discretion, will decline to exercise its jurisdiction over claim 4 at this time. If Haskell includes state claims alongside any revised federal claims in an amended complaint, and any of those federal claims survive a motion to dismiss, the Court will reconsider whether to exercise its supplemental jurisdiction over the state claims.

Defendants also ask the Court to strike Haskell's state law claim under California's "anti-SLAPP" statute.[7] Ruling upon the motion at this time, however, would be inconsistent with Rule 15's "policy favoring liberal amendment." *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (concluding that Cal. Code Civ. Proc. 425.16(f) does not apply in federal court proceedings because it conflicts with Rule 56(f)); *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1117 (N.D. Cal. 2024) ("Given Rule 15's 'policy favoring liberal amendment,' the Court [ ] defer[s] any ruling under the anti-SLAPP statute until after [plaintiff] has been afforded an opportunity to amend."). Defendants may renew their anti-SLAPP motion in the future either in connection with any amended complaint or if Haskell fails to file any such complaint.

## CONCLUSION

For the reasons discussed herein, defendants' motion to dismiss is granted with leave to amend. Any amended complaint shall be filed with 28 days of this order.

**IT IS SO ORDERED.**

Dated: August 27, 2025

P. Casey Pitts
United States District Judge

---

[7] "SLAPP" is an acronym for the phrase "strategic litigation against public participation."